## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SENTRY SELECT INSURANCE COMPANY and SENTRY INSURANCE A MUTUAL COMPANY** | : | **CIVIL ACTION** |
| Planitiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **LBL SKYSYSTEMS (U.S.A), INC., ST. PAUL GUARANTEE INSURANCE COMPANY, SOLERA CONSTRUCTION, INC., DCM ERECTORS, INC., ERNST & YOUNG, INC., RAYMOND CHABOT INC., LINDA ANGELLO as COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF LABOR, ANDREW W. ERISTOFF as COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, LAURENTIAN BANK OF CANADA** | : | **NO.  06-4779** |
| Defendants. | : | |

**DuBOIS, J.**                                                                                    **MAY 18, 2007**

## MEMORANDUM

## I.    INTRODUCTION

Plaintiff Sentry Select Insurance Company ("Sentry Select") is a judgment debtor under a judgment entered in this Court in a Memorandum and Order dated September 6, 2006, in Civil Action No. 02-5379.  Judgment was entered in favor of plaintiff LBL Skysystems (U.S.A.), Inc. ("LBL") and against Sentry Select and APG-America, Inc., in the sum of $1,566,381.00 (the "LBL Judgment").  Plaintiff Sentry Insurance A Mutual Company ("Sentry Insurance") issued a supersedeas bond that Sentry Select filed in anticipation of an appeal on September 18, 2006.

Plaintiffs initiated the instant action on October 25, 2006 by interpleader complaint

against LBL, St. Paul Guarantee Insurance Company, f/k/a London Guarantee Insurance

Company ("St. Paul"), Solera Construction, Inc. and DCM Erectors, Inc. ("Solera/DCM"), Ernst

& Young, Inc. ("Ernst & Young"), Raymond Chabot Inc. ("Raymond Chabot"), Linda Angello as

Commission of the New York State Department of Labor ("Linda Angello"), Andrew W. Eristoff

as Commissioner of the New York Department of Taxation and Finance ("Andrew W. Eristoff"),

and Laurentian Bank of Canada ("Laurentian Bank").  In the Interpleader Action, plaintiffs

sought a judicial determination of entitlement to the proceeds of the LBL Judgment.

Presently before the Court are a Motion for Entry of Judgment by Default or, in the

Alternative, for Summary Judgment Against the Plaintiffs and the Other Defendants filed by St.

Paul, and the Cross-Motion of Solera/DCM Seeking Entry of An Order (I) Dismissing Certain

Defendants and Striking Their Pleadings; (II) Dismissing the Cross-Claims of St. Paul Guarantee

Insurance Company and LBL Skystems (U.S.A.), Inc.; and (III) Granting Summary Judgment, or

in the Alternative, Transferring this Action to the United States District Court for the Eastern

District of New York.  For the reasons that follow, the Court grants St. Paul's Motion for

Summary Judgment, denies all other motions, and concludes that St. Paul's interest in the LBL

Judgment is prior to any other claim, and St. Paul is entitled to all funds at issue held in escrow,

less those reasonable attorney fees, costs and expenses awarded to interpleading plaintiffs by the

Court.

## II.    BACKGROUND

### A.    LBL Judgment

On July 25, 2002, LBL filed a Complaint against APG-America, Inc. in this Court (Civil

Action No. 02-5379) seeking damages relating to APG's alleged breach of a contract between

APG and LBL.  On August 29, 2002, LBL filed an Amended Complaint against APG and Sentry Select, APG's surety on the contract.  Following a bench trial, in a Memorandum and Order dated September 6, 2006, the Court entered judgment in favor of LBL and against APG and Sentry Select in the total amount of $1,566,381, plus interest from the time when plaintiff informed defendants of its final damages calculation.  On September 18, 2006, Sentry Select filed a supersedeas bond issued by Sentry Insurance with this Court in the amount of $1,900,000.[1]

### B.    Interpleader Complaint and Subsequent Relief

After receiving competing demands for the proceeds of the LBL Judgment from LBL, St. Paul, and Solera/DCM, plaintiffs filed an Interpleader Complaint under Federal Rule of Civil Procedure 22 and an Emergency Motion for Temporary Restraining Order and Preliminary Injunction on October 25, 2006.[2]  Named as defendants were LBL, St. Paul, Solera/DCM, Ernst & Young, Raymond Chabot, Linda Angello, Andrew W. Eristoff, and Laurentian Bank.  By Order dated October 26, 2006, the Court issued a Temporary Restraining Order enjoining all defendants "from taking action that would result in enforcement, levy or execution upon" the proceeds of the LBL Judgment.  The Court further ordered the defendants to show cause "why this Temporary Restraining Order should not be continued and why a Preliminary Injunction

---

[1] In the Interpleader Complaint, Sentry explains that the supersedeas bond was filed in contemplation of the filing of an appeal from the Judgment.  However, no appeal from the Judgment was filed and the LBL Judgment is now final.

[2] In support of the Emergency Motion, Sentry alleged that LBL, St. Paul, and Solera/DCM "have demanded payment of the judgment proceeds from Sentry Select, and all four are presently engaged in efforts, both in the Eastern District of Pennsylvania and in the District of New Jersey, to levy upon Sentry Select and/or Sentry Insurance and the supersedeas bond based upon their various interests."  Emergency Mot. at 2-3.

should not be ordered."

On November 6, 2006, the Court was advised by Joint Report (submitted by Sentry Select, Sentry Insurance, LBL, and St. Paul) that all parties "consented to the entry of a preliminary injunction on the terms requested by interpleader plaintiffs, and waived the necessity of a hearing in connection therewith." Accordingly, on November 8, 2006, the Court issued a preliminary injunction extending the previously issued Temporary Restraining Order pending the granting of interpleader relief.

Thereafter, interpleader relief was granted pursuant to the terms of the Stipulation and Order Granting Interpleader Relief, Directing Interpleader among Defendants and Setting Application for Plaintiffs' Fees and Expenses entered on November 22, 2006 ("Interpleader Order"). In the Interpleader Order, the Court ordered, *inter alia*, as follows. First, the Court found, upon consideration of letters sent by on or on behalf of defendants Andrew W. Eristoff, Raymond Chabot, Linda Angello, Laurentian Bank, and Ernst & Young, Inc., that those defendants "waived any claim to the funds at issue in this interpleader matter as well as waived the right to appear and participate in these proceedings . . ." Interpleader Order ¶ 1. This finding left only LBL, St. Paul, and Solera/DCM as interested defendants in the interpleader action. Second, the Court required that the interested defendants "interplead together" so that the Court "may direct to which of the defendants the proceeds due or to become due" under the LBL Judgment shall be paid. Id. ¶ 2. Third, the Court directed interpleader plaintiffs to deposit the proceeds of the LBL Judgment in escrow.[3]

---

[3] Pursuant to the Interpleader Order, on November 28, 2006, plaintiffs deposited with the law firm of Lavin, O'Neil, Ricci, Cedrone & Disipio ("Lavin, O'Neil"), as Escrow Trustee, $1,747,893.50 (the sum of $1,743,367.32, plus per diem interest of $238.22 from November 9,

### C.    Pleadings of the Interested Defendants

#### 1.    St. Paul

On November 13, 2006, St. Paul filed its Answer to the plaintiffs' Interpleader

Complaint, and asserted cross-claims against all defendants "for declaratory relief to establish the

priority" of St. Paul's claim to the proceeds of the LBL Judgment, St. Paul Answer/Cross-Claims

at 5, and for "judgment in its favor and against all Cross-Claim Defendants for the Interpleaded

Funds, and against Plaintiffs . . . , and a direction to the holder of the Interpleaded Funds to

disburse them to St. Paul. . . ." Id. at 18.

St. Paul claims priority to the proceeds of the LBL Judgment based upon an alleged prior

perfected security interest in LBL's assets.  St. Paul argues that (1) LBL and St. Paul's

predecessor, London Guarantee, entered into a security agreement granting St. Paul a security

interest in, *inter alia* "all of LBL's property, assets, rights and undertakings of any kind, at any

time, wherever situated," id. at 7; (2) pursuant to that agreement St. Paul issued bonds

guaranteeing the completion of LBL's work under its construction contracts; (3) St. Paul

perfected the security interest in LBL's assets by filing a U.C.C.-1 Financing Statement with the

New York Secretary of State on November 4, 2002; and (4) LBL is currently indebted to St. Paul

for "approximately $13 million in connection with bonds that [St. Paul] issued to guarantee

LBL's work on various construction projects."  Id. at 7-8.

---

2006 to the date of deposit).  Lavin, O'Neil then deposited those funds "into a separate interest
bearing account titled 'Lavin, O'Neil, Ricci, Ced[r]one & Disipio as Interpleader Trustee and
Escrow Agent' (account no. 8618704508) at PNC Bank, a federally insured institution located
within the Eastern District of Pennsylvania."  Verified Statement of Eugene Hamill at 3.  A
verified statement attesting to the deposit was filed with this Court on December 4, 2006.  Id.

2.      LBL

LBL filed cross-claims against all defendants on December 13, 2006.  In so doing, LBL

adopted the facts as set forth in St. Paul's Answer and Cross-Claims.  LBL Answer/Cross-Claims

¶ 1.  LBL's cross-claims seek declaratory judgment that "(a) the Security Agreement entered into

between St. Paul/London (through its predecessor, London Guarantee) establishes a valid

security interest and lien in and on LBL's Assets; and (b) St. Paul/London's security interest and

lien secure the indebtedness of LBL to St. Paul/London, which is currently due and outstanding

in an amount in excess of the amount of the Pennsylvania Judgment."  Id. at 4.

3.      Solera/DCM

On January 8, 2007, Solera/DCM filed an Answer, Response and Cross-Claim.  In its

Cross-Claim, Solera/DCM states that "Solera/DCM is entitled to the Interpleaded Funds," and

"requests entry of an order in favor of Solera/DCM and against all other defendants to the

Interplreader [sic] Action awarding the Interpleaded Funds to Solera/DCM and directing the

holder of the Interpleaded Funds to disburse such Interpleaded Funds to Solera/DCM and for

such other and further relief as this Court deems appropriate."  Solera/DCM Answer/Cross-

Claim at 23.

Solera/DCM's claim to the proceeds of the LBL Judgment arises from a default judgment

entered against LBL and in favor of Solera/DCM in the Eastern District of New York on May 30,

2006 in Civil Action No. 03-1383.  The order provides that the United States of America, for the

use and benefit of Solera/DCM, "does recover of LBL" $4,092,237.07, with costs and

disbursements, plus interest.  Id. ¶ 26; Ex. A.  Solera/DCM further alleges that "LBL has failed to

pay Solera/DCM the amount owing pursuant to the Default Judgment Order."  Id. ¶ 27.

6

Accordingly, Solera/DCM alleges that they are entitled to the proceeds of the LBL Judgment "as a result of the debt owed by LBL pursuant to the Default Judgment Order, which debt exceeds the amount of the Interpleaded Funds." Id. ¶ 55.

## III.    SUMMARY OF MOTIONS

On December 21, 2006, St. Paul filed a Motion for Entry of Judgment of Default, or, in the Alternative, for Summary Judgment Against the Plaintiffs and the Other Defendants. St. Paul seeks judgment by default pursuant to Rule 55 of the Federal Rules of Civil Procedure against all defendants. In the alternative, St. Paul seeks the granting of a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against all parties on the basis that (1) St. Paul has a fully enforceable, attached and perfected security interest in and to the Interpleaded Funds; (2) that such security interest has complete priority over any and all interests of any of Solera/DCM or any of the other defendants; (3) that the security interest secures LBL's indebtedness to St. Paul, which exceeds the amount of the Interpleaded Funds; and (4) "that the indebtedness is not subject to setoff, reduction, recharacterization or any other challenge or objection of any kind by any of the other defendants herein." St. Paul Mot. at 3-4.

On January 8, 2006, Solera/DCM filed a Cross-Motion seeking entry of an order (1) dismissing the disinterested defendants pursuant to Rule 21 of the Federal Rules of Civil Procedure and striking those defendants from all pleadings; (2) dismissing the cross-claims of St. Paul and LBL pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (3) granting summary judgment in favor of Solera/DCM, pursuant to Rule 56 fo the Federal Rules of Civil Procedure and awarding the interpleaded funds to Solera/DCM. In the alternative, Solera/DCM asks that the action and the interpleaded funds be transferred to the United States District Court

for the Eastern District of New York pursuant to 28 U.S.C. §§ 1404 and 1406.

## IV.   ST. PAUL MOTION FOR DEFAULT JUDGMENT

St. Paul "requests that the Court enter a judgment by default against all other defendants

in this action," on the ground that no defendant "answered or responded in any way" to St. Paul's

cross-claims in a timely manner.  St. Paul Mot. at 2, 5.  The Court concludes that St. Paul has

failed to demonstrate that default judgment is appropriate or necessary at this time with respect to

either the disinterested defendants or Solera/DCM.[4]

### A.   Legal Standard–Default Judgment

Federal Rule of Civil Procedure 55 governs the entry of default judgment.  Rule 55

provides that default judgment may be entered when "a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend as provided by these rules."

Fed. R. Civ. P. 55(a).  The Court is to consider three factors in deciding whether to enter default

judgment: (1) prejudice to the moving party if default is denied; (2) whether the defendant

appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct,

taken willfully and in bad faith.  Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

A  party who has made a proper showing under Rule 55 is not entitled to default

judgment as of right; the entry of default is left to the "sound judicial discretion" of the Court.

Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).  In exercising that discretion, the

Court is mindful of the Third Circuit's stated preference "that cases be disposed of on the merits

---

[4]St. Paul's Motion for Default Judgment does not specifically mention LBL.  The Court notes that the entry of default judgment would be inappropriate with respect to LBL as LBL's Cross-Claim in Interpleader filed on December 13, 2006 specifically responds to the St. Paul cross-claims.

8

whenever practicable." Id.; Hill v. Williamsport Police Dep't, 69 F. App'x 49, 51 (3d Cir. 2003) ("Our Court does not favor entry of defaults or default judgments . . . as it prefers adjudications on the merits.").

**B.      Analysis**

**1.      Motion for Default Judgment Against Disinterested Defendants**

In the Interpleader Order, the Court ruled that the disinterested defendants, Andrew W. Eristoff, Raymond Chabot, Linda Angello, Laurentian Bank, and Ernst & Young, Inc, "waived the right to appear and participate in these proceedings." Interpleader Order ¶ 1. In light of this ruling, the Court concludes that the entry of default judgment against these defendants for failing to participate by filing responsive pleadings is not warranted at this time.

**2.      Motion for Default Judgment Against Solera/DCM**

St. Paul served its Answer to Interpleader Complaint and Cross-Claims on Sentry and all defendants on November 13, 2006. St. Paul's Motion for Default Judgment is based on the fact that, as of the filing of that motion on December 21, 2006, no Answers had been filed in response to the cross-claims. On January 8, 2007, DCM/Solea filed a Answer, Response and Cross-Claim in response to both the interpleader Complaint and St. Paul and LBL's cross-claims.

However, as St. Paul acknowledges, on December 12, 2006, the Court issued an Order granting Solera/DCM's request for an extension of time to answer, move or otherwise plead to the interpleader Complaint. St. Paul argues that because the Order (and Solera/DCM's request) only addresses the interpleader Complaint, and not St. Paul's cross-claims, that Solera/DCM response to the cross-claims on January 8, 2007 was untimely. See St. Paul Mot. at 3 n.1 ("Solera/DCM requested an extension of time to answer the interpleader complaint herein . . .

9

Solera/DCM failed, however, to make the Court aware of St. Paul/London's cross-claims or request an extension of time to respond to them, and this Court did not grant any such extension.").

The Court concludes that the December 12, 2006 Order, although not directly addressing St. Paul's cross-claims, did provide Solera/DCM with an extension of time to file responsive pleadings and that default judgment against Solera/DCM is unwarranted.  Accordingly, St. Paul's Motion for Default Judgment is denied as to all defendants.

## V.   SOLERA/DCM'S MOTION TO STRIKE DISINTERESTED DEFENDANTS

In its Cross Motion, Solera/DCM's first request for relief is to dismiss the disinterested defendants and to strike those defendants from the pleadings.  Solera/DCM argues that "[d]ismissing the Disinterested Interpleader-Defendants and striking them from the pleadings will help streamline this case, simplifying what is merely a two party dispute, by leaving St. Paul and Solera/DCM as the remaining interested stakeholders."  Solera/DCM Cross Mot. at 27.

### A.   Legal Standard–Motion to Strike Defendants

Rule 21 provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."  Fed. R. Civ. P. 21.  The granting or denial of a motion to add or drop a party under Rule 21 lies in the discretion of the court.  See, e.g., Wolfson v. Lewis, 168 F.R.D. 530, 533 (E.D. Pa. 1996).

### B.   Analysis

The Court concludes that relief under Rule 21 is not necessary at this time.  The Interpleader Order sufficiently narrowed the controversy to the interested defendants and no further action by the Court is warranted.  Accordingly, Solera/DCM's motion to strike the

10

disinterested defendants is denied.

## VI.   SOLERA/DCM'S MOTION TO DISMISS CROSS-CLAIMS OF LBL AND ST. PAUL

Solera/DCM seeks to dismiss the cross-claims of St. Paul and LBL pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that those defendants have failed to state a claim for which relief can be granted.

### A.   Legal Standard–Motion to Dismiss

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all well pleaded facts in the cross-claim as true and view them in the light most favorable to the plaintiff.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  The Court must only consider those facts alleged in the cross-claim in considering such a motion.  See ALA v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994).  A cross-claim should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishin v. King & Spaulding, 467 U.S. 69, 73 (1984).

### B.   Analysis

#### 1.   Motion to Dismiss St. Paul Cross-Claims

Solera/DCM moves under Rule 12(b)(6) to dismiss the cross-claims of St. Paul arguing that "St. Paul has failed to adequately allege that it has a claim."  Solera/DCM Cross Mot. at 27. Solera/DCM argues that St. Paul's claim that LBL is indebted to St. Paul is "baldly asserted and unsupported by any facts in the St. Paul Answer."  Id. at 29.

In its cross-claims, St. Paul alleges that St. Paul has an attached, perfected security interest in LBL's assets; that LBL is indebted to St. Paul for approximately $13 million; and that

St. Paul's security interest in LBL's assets gives St. Paul priority to the proceeds of the LBL

Judgment to satisfy, in part, LBL's indebtedness to St. Paul.

The Court concludes that St. Paul has sufficiently plead its claim of entitlement to the

proceeds of the LBL Judgment.  In arguing that St. Paul's claims are "unsupported by any facts in

the St. Paul Answer," Solera/DCM misconstrues the pleading requirements of the Federal Rules

of Civil Procedure.  "Notice pleading" under Federal Rule of Civil Procedure 8 requires only a

short plain statement of the claims and does not require the pleading of facts.  Leatherman v.

Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 167 (1993).  St. Paul

has met this requirement, and therefore Solera/DCM's Motion to Dismiss St. Paul's Cross-

Claims is denied.[5]

### 2. Motion to Dismiss LBL Cross-Claims

Solera/DCM also seeks to dismiss the cross-claims of LBL.  Solera/DCM argues that

"[t]he [LBL] Answer, filed by and on behalf of St. Paul, does nothing more than gratuitously

agree with the St. Paul Answer, which has been refuted above."  Solera/DCM Mot. at 33.  The

Court concludes, as above, that LBL has sufficiently stated a claim because LBL has alleged that

St. Paul is entitled to the proceeds of the LBL Judgment on the basis of a prior perfected security

interest.  Solera/DCM's Motion to Dismiss LBL's Cross-Claims is denied.

## VII.   SOLERA/DCM'S MOTION TO TRANSFER

Solera/DCM requests that, if summary judgment is not granted in its favor, that the action

---

[5]Solera/DCM Motion to Dismiss also addresses the merits of St. Paul's claims.  The
merits of St. Paul's claims are more properly addressed in evaluating the cross motions for
summary judgment.  See, e.g., Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d
1192, 1197 (3d Cir. 2003).  The Court discusses the cross motions in Section VIII, infra.

be transferred to the Eastern District of New York arguing that (1) venue in this Court is improper and transfer is appropriate pursuant to 28 U.S.C. § 1406; and (2) transfer is appropriate pursuant to 28 U.S.C. § 1404(a) because venue in the Eastern District of New York would be a more convenient forum.[6]

### A.      Legal Standard–Motion to Transfer

The question before this Court is whether this case should be transferred to the Eastern District of New York pursuant to either 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).  28 U.S.C. § 1406(a) permits a court to dismiss or transfer a case for improper venue.  The statute states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  In federal diversity cases, venue is proper in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

The second statute, 28 U.S.C. § 1404(a) permits transfer on the ground of venue, and states: "For the convenience of parties and witnesses, in the interests of justice, a district court

---

[6]Solera/DCM reserved the right to seek a transfer of the venue of this interpleader action and the Escrow Fund to the United States District Court for the Eastern District of New York in the November 22, 2006 Stipulation and Order Granting Interpleader Relief, Directing Interpleader Among Defendants and Setting Application for Plaintiffs' Fees and Expenses. Interpleader Order ¶ 7.b.

may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995) (distinguishing § 1406(a) from § 1404(a)).  Once a court determines that venue would be proper in another district, the court must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The party moving to transfer venue bears the burden of establishing the need for the transfer.  Id.; Miller v. Consol. Rail Corp., 196 F.R.D. 22, 24 (E.D. Pa. 2000).

**B.     Analysis**

1.     Motion to Transfer Under 28 U.S.C. § 1406(a)

First, Solera/DCM argues that venue is improper in this Court under 28 U.S.C. § 1391, and requests that the Court transfer this action to the Eastern District of New York pursuant to 28 U.S.C. § 1406(a).  The only relevant provision of § 1391 provides that "a civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in . . .  (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ."  28 U.S.C. § 1391(2).  Solera/DCM argues that the proper focus of inquiry should be whether the relative rights, claims and priorities of Solera/DCM and St. Paul have any connection to Pennsylvania.  Specifically, Solera/DCM argues that St. Paul's claim to the judgment arises out of the Security Agreement filed in New York and Solera/DCM's claim to the judgment arises out of the default judgment entered in New York.

In response, St. Paul first argues that venue is proper in this district under 28 U.S.C.

14

§ 1391.  With respect to the events giving rise to this action, St. Paul focuses on (a) the judgment giving rise to the interpleaded funds in this Court; (b) the actions of Solera/DCM to attempt to attach those funds prior to the initiation of this interpleader case; (c) the injunctive relief issued by this Court; and (d) St. Paul's alleged disbursements of funds for the completion of the Philadelphia Airport project.  All of these events identified by St. Paul occurred in the Eastern District of Pennsylvania.

The Court agrees with St. Paul–venue is proper in the Eastern District of Pennsylvania because of the nexus between the interpleaded funds (the subject of this case) and this district. The Eastern District of Pennsylvania is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391.  Because venue is proper in the Eastern District of Pennsylvania, Solera/DCM's Motion to Transfer pursuant to 28 U.S.C. § 1406(a) is denied.

2. Motion to Transfer Under 28 U.S.C. § 1404(a)

In the alternative, Solera/DCM argues that a transfer should be granted under 28 U.S.C. § 1404(a) because the Eastern District New York is a more convenient forum for the parties. However, the motion to transfer pursuant to § 1404(a) is irrelevant because the Court decides the issues presented by the Interpleader Complaint and the competing claims on cross motions for summary judgment.  There is no need for a hearing and the attorneys need not appear in court. See, e.g., SEC v. Dimensional Entertainment Corp., 493 F. Supp. 1270, 1283 (S.D.N.Y. 1980) (denying § 1404(a) motion to transfer where there was no need for parties to appear at hearings because Court's determination was based on documents submitted by the parties).  The Court

concludes that the convenience of the parties does not require this Court to transfer this case to the Eastern District of New York.  Accordingly, Solera/DCM's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is denied.

## VIII.   MOTIONS FOR SUMMARY JUDGMENT

Both St. Paul and Solera/DCM have filed motions for summary judgment in which they assert priority to the proceeds of the LBL Judgment.  The Court addresses these motions together and determines the priority of interest to the funds.

### A.      Legal Standard–Summary Judgment

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Supreme Court has further ruled that a "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party," and a factual dispute is "material" when it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  In a summary judgment motion, the moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  White v. Ottinger, 442 F. Supp. 2d 236, 242 (E.D. Pa. 2006).  The party opposing the motion, however, cannot rely merely upon

16

bare assertions, conclusory allegations, or suspicions to support its claim.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

###### B.    Legal Standard–Priority of Interests

####### 1.    Choice of Law

As a threshold matter, the Court must determine what state's law governs the determination of lien priority in this case.  Both St. Paul and Solera/DCM argue that priority to the proceeds of the LBL Judgment is governed by Article 9 of the Uniform Commercial Code ("UCC") as adopted in New York.

Under the Uniform Commercial Code ("UCC") as adopted in both New York and Pennsylvania, the local law of the jurisdiction in which a debtor is "located" governs "perfection, the effect of perfect or nonperfection, and the priority of a security interest in collateral."  N.Y. U.C.C. § 9-301(a); 13 Pa.C.S.A. § 9301.  For a "registered organization organized under state law," the U.C.C. specifies that a debtor's location is the state under the law of which it is organized.  N.Y. U.C.C. § 9-307(e); 13 Pa C.S.A. § 9307(e).  In this case, LBL was organized as a New York corporation; therefore LBL is "located" in New York for the purpose of Article 9, and New York law governs priority to the proceeds of the LBL Judgment.

####### 3.    Creation of a Perfected Security Interest

Under Article 9's comprehensive scheme regulating security interests in personal property, creditors are enabled to protect their interests in collateral held by debtors or other third parties.  A security interest becomes valid and enforceable against the debtor and third parties once three events occur:

> (1)    Either the collateral has come into the possession of the secured party, or the debtor has signed a security agreement that contains a description of the collateral;

17

(2)     The secured party has given value to the debtor; and

(3)     The debtor has acquired rights in the collateral.

Continental Coffee Prod. Co. v. Banque Lavoro S.A., 852 F. Supp. 1235, 1237 (S.D.N.Y. 1994)

(citing N.Y. U.C.C. § 9-203).  Upon the completion of these steps, the security interest is

enforceable and "the interest is said to have 'attached.'"  Id.

 In most cases, an attached security interest can then be perfected by the filing of a UCC-1

Financing Statement.  See id. § 9-310(a) ("General rule: perfection by filing.  Except as

otherwise provided in subsection (b) and Section 9-312(b), a financing statement must be filed to

perfect all security interests and agricultural liens.").  This financing statement must meet the

requirements of Article 9, Section 5.  "[A] financing statement is sufficient only if it (1) provides

the name of the debtor, (2) provides the name of the secured party or a representative of the

secured party, and (3) indicates the collateral covered by the financing statement . . . ."  Id. § 9-

502(a).

        Once these steps are complete, the holder of the perfected security interest will generally

hold priority to the collateral described in the security agreement against all subsequent interests.

See id. § 9-322(a); Continental Coffee, 852 F. Supp. at 1237 ("Perfectiion of a security interest

provides additional security to the creditor, in that the creditor with a perfected security interest

has priority over creditors with unperfected security interests as well as priority over general

creditors.").  In particular, the claim of the holder of a prior perfected security interest to the

collateral is superior to the claim of a judgment creditor whose claims arise subsequent to the

perfection of the prior security interest.  N.Y. U.C.C. § 9-301(1)(b); see also, e.g., Norstar Bank

v. Lawrence Davis, 661 N.Y.S.2d 106, 107 (N.Y. App. Div. 1997) ("Here, either the assignment

[in 1989] or the perfection [in 1990] of security interests  gives priority to Davis, Inc. over the

claims of the Bank as judgment creditor, claims that did not arise until 1996].").

     **C.**    **Overview of Parties' Claimed Interests**

          1.     St. Paul's Claim to the Proceeds of the LBL Judgment

St. Paul claims entitlement to the proceeds of the LBL Judgment, arguing that St. Paul has a prior perfected security interest. On or about April 16, 1998, LBL and its Canadian parent corporation, Lessard Beaucage Lemiux Inc. (now known as LBL Skysystems Corporation), signed, executed, and delivered an Indemnity and Security Agreement to and in favor of St. Paul's predecessor, London Guarantee. Knudsen Dec. ¶ 3, St. Paul Mot. Pursuant to that agreement, St. Paul/London "issued, or caused to be issued" bonds that "generally guaranteed the completion of LBL's work under its construction contracts and/or the payment of claims thereunder or related thereto." Id. ¶ 5. Mark Knudsen, vice president of St. Paul, states that the total indebtedness of LBL to St. Paul arising from the Security Agreement is "not less than $13,307.757.00." Id.

On November 4, 2002 St. Paul/London perfected that security interest by filing a UCC-1 Financing Statement with the Secretary of State of the State of New York. Id. ¶ 11. The financing statement (1) named "LBL Skystems (U.S.A.), Inc." as debtor, (2) named "London Guarantee Insurance Company" as the secured party, and (3) indicated that the financing statement covered "all assets" as collateral. Id., Ex. D.

St. Paul's argument is as follows: "based upon the description of the Collateral in the Indemnity and Security Agreement, the granting of the Security Interest in the Collateral to secure the Indebtedness, and the perfection of this Security Interest by [St. Paul's] proper filing of UCC-1 Financing Statement, which remains effective, LBL's Pennsylvania Judgment, the

19

Supersedeas Bond, and the Interpleaded Funds are all subject to [St. Paul's] perfected and superior Security Interest."  St. Paul Mot. at 10.

        2.      Solera/DCM's Claim to the Proceeds of the LBL Judgment

Solera/DCM's claim to the proceeds of the LBL Judgment is based on the default judgment awarded to Solera/DCM in the Eastern District of New York on May 30, 2006 in Civil Action No. 03-1383.  The order provides that the United States of America, for the use and benefit of Solera/DCM, "does recover of LBL" $4,092,237.07, with costs and disbursements, plus interest.  Solera/DCM Cross Mot., Ex. G.  That order has become final.  See id. at 11. Following the entry of the Default Judgment Order, Solera/DCM took various steps to execute on the judgment, including registering the Default Judgment as a foreign judgment with this Court on September 5, 2006, in Civil Action Number 06-mc-163.  On September 22, 2006, Solera/DCM filed a Praecipe for Writ of Execution against LBL.[7]

Solera/DCM argues that the Default Judgment Order entitles Solera/DCM to the proceeds of the LBL Judgment because St. Paul does not in fact have a perfected security interest LBL's assets.

**D.    Analysis**

There is no question that, if St. Paul has a prior perfected security interest in the assets of LBL, St. Paul has priority in the proceeds of the LBL Judgment.  See N.Y. U.C.C. §§ 9-322(a); 317(a)(2).  The issue before the Court, however, is whether St. Paul has any enforceable interest

---

[7]Solera/DCM also forwarded the Praecipe to the U.S. Marshal Service and sent a letter to the Court dated September 25, 2006, in which it requested that the Court "issue an order formally assigning all rights of LBL Skystems in the judgment against APG-America, Inc. and Sentry Select Insurance Company to Solera/DCM."  Compl., Ex. B.  The Court did not issue such an Order.

in the proceeds of the LBL Judgment, a conclusion contested by Solera/DCM.  As discussed

above, for St. Paul to have a perfected, attached security interest in the collateral, St. Paul must

demonstrate that the debtor (LBL) has signed a security agreement with St. Paul, St. Paul has

given value to LBL,

　　LBL has interest in the collateral, and that the interest was perfected by the filing of a

proper financing statement.

<u>　　　　　　1.　　Existence of Security Agreement</u>

First, the Court must address whether LBL signed a security agreement with St. Paul.  St.

Paul has submitted an Indemnity and Security Agreement signed by LBL.  <u>See</u> St. Paul Mot.,

Knudsen Decl., Ex. A.  Solera/DCM argues that St. Paul has failed to establish the effectiveness

of the Indemnity and Security Agreement because the original agreement is in French, and St.

Paul did not provide a "certified translated copy" with the St. Paul Answer and Cross-Claims.

Solera/DCM Cross Mot. at 21 ("Without a certified translation, St. Paul has not adequately

alleged that the Alleged Security Agreement grants it any rights.").

The Court rejects this argument–that the Indemnity and Security Agreement was drafted

in French is absolutely immaterial.  Moreover, St. Paul submitted documentation that "the

English translation of [the Security Agreement] is an accurate rendition of the French version

signed by LBL . . . ."  Pamela Davis Aff., St. Paul Reply.   Accordingly, the Court concludes that

St. Paul has met the first step under Article 9–the Indemnity and Security Agreement submitted

by St. Paul demonstrates that LBL and St. Paul entered into an effective security agreement.

<u>　　　　　　2.　　Value Given</u>

Second, the Court must determine whether value was given from St. Paul to LBL.  St.

Paul argues that value was given in the form of approximately $13 million in bonds issued, "or caused to be issued" by St. Paul in support of LBL's construction contracts.  See Knudsen Decl. ¶ 5.  Solera/DCM disputes that value was given arguing that "St. Paul merely vaguely alleges that LBL USA is indebted to St. Paul in the approximate amount of $13 million 'in connection with bonds' that St. Paul issued.  St. Paul fails to identify these 'bonds' in any manner or the construction projects for which they were issued."  Id. at 22.

The Court rejects Solera/DCM's argument that no value was given; the submissions of St. Paul aptly demonstrate that St. Paul issued numerous bonds to LBL.  St. Paul has submitted "a true and complete copy of [St. Paul's] Summary of Claims relating to bonds issued on behalf of LBL" generated from St. Paul's automated claims system, and copies of the Bonds issued by those projects identified in the Summary.  See Suppl. Knudsen Decl., Exs. D, E, F.[8]  Thus, the Court concludes that St. Paul has met the second step because value was given from St. Paul to Solera/DCM in the form of bonds.

<u>3.        Debtor's Rights in the Collateral</u>

Third, there is no dispute that LBL has acquired rights in the collateral.  The collateral named by the Indemnity and Security Agreement includes, *inter alia*:

> (a) all of the claims and debts arising out of a Bonded Contract which [LBL] holds against all persons . . . .;
>
> *        *        *
>
> (d) all of the sub-contracts and supply contracts which [LBL] has granted or will grant, comprising all guarantees and warranties attached thereto, together with all materials included thereunder relating to the execution of the Bonded Contracts; and

---

[8]Solera/DCM construes all bonds and contracts not relating to the Philadelphia Airport Project as "irrelevant."  Solera/DCM Reply at 4.  This is not accurate; under the terms of the Security Agreement, *any* issuance of bonds by St. Paul for LBL is relevant.  St. Paul's issuance of such bonds are secured by all assets of LBL, including the proceeds of the LBL Judgment.

* * *

(h) all of [LBL's] property, assets, rights and undertakings of every nature, tiem and kind, now or at any time and from time to time, wherever situated.

Knudsen Decl., Ex. A ¶ 20.  The Court concludes that LBL has rights in this collateral, and therefore, St. Paul has met the third step and has an attached security interest in the collateral.

### 4.    Perfection

Finally, the Court must determine whether St. Paul has properly perfected its attached security interest.  St. Paul argues that perfection was completed when, on November 4, 2002 St. Paul filed a UCC-1 Financing Statement with the Secretary of State of the State of New York.  Knudsen Decl. ¶ 11, Ex D.  Solera/DCM raises two challenges to St. Paul's claim of perfection which require comment.  First, Solera/DCM states that the UCC-1 Financing Statement "does not reference the Alleged Security Agreement."  Solera/DCM Mot. at 22.  However, such reference is not required by Article 9.  See N.Y. UCC § 9-502.  Second, Solera/DCM argues that St. Paul's financing statement "was filed more than four years after the date of the Alleged Security Agreement . . . The mere passage of such time raises a significant issue of material fact as to whether St. Paul properly perfected its alleged security interest."  Id. at 23. Notably, Solera/DCM cites no case law for the proposition that a delay in filing a financing statement negates perfection, and the Court rejects this argument.[9]

The Court concludes that St. Paul has perfected its security interest.  The UCC-1 Financing Statement filed on November 20, 2002 meets the requirements of § 9-502(a) in that it (1) provides the name of the debtor (LBL), (2) provides the name of the secured party (London

---

[9]The Court deems it unnecessary to address Solera/DCM's remaining arguments on perfection.  Suffice it to say that all such arguments are without merit.

Guarantee Insurance Company), and (3) "indicates the collateral covered by the financing statement" ("All assets").[10]  Although Solera/DCM has raised numerous theories by which they challenge the filing of the financing statement, those theories are pure speculation and are not sufficient to defeat the granting of St. Paul's Motion for Summary Judgment.  See Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989); United States ex rel. Brown v. Merant, Inc., 2002 U.S. Dist. LEXIS 5474, *21 (E.D. Pa. Mar. 29, 2002).

Because the Court concludes that St. Paul has a perfected security interest in LBL's assets that is prior in time to any interest asserted by any other parties, including Solera/DCM, St. Paul has priority to the proceeds of the LBL Judgment.[11]  Accordingly, the Court grants St. Paul's Motion for Summary Judgment, and denies Solera/DCM's Cross Motion for Summary Judgment.  Because the sum of the proceeds of the LBL Judgment is less than the amount of LBL's indebtedness to St. Paul, St. Paul is entitled to the entire proceeds of the LBL Judgment, less those reasonable attorney fees, costs and expenses allocated to Interpleader plaintiffs.

## IX.   CONCLUSION

For the foregoing reasons, St. Paul's motion for default judgment is denied and the motions of Solera/DCM for dismissal of St. Paul and LBL's cross-claims, for dismissal of the disinterested defendants, and for transfer are denied.  St. Paul's motion for summary judgment is granted and Solera/DCM's cross motion for summary judgment is denied.  The Court concludes

---

[10]"A financing statement sufficiently indicates the collateral that it covers if the financing statement provides . . . (2) an indication that the financing statement covers all assets or all personal property."  N.Y. UCC § 9-504.

[11]As noted above, with the exception of Solera/DCM, no other party has asserted an interest in the proceeds of the LBL Judgment, and the Court concludes that no party has an interest in the proceeds of the LBL Judgment superior to St. Paul.

that St. Paul's security interest in the proceeds of the LBL Judgment is superior to any other interest in the funds held in escrow pursuant to the Interpleader Order.  Thus, St. Paul is entitled to such funds, less those costs awarded to interpleader plaintiffs.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SENTRY SELECT INSURANCE** | : | **CIVIL ACTION** |
| **COMPANY and SENTRY INSURANCE A** | : | |
| **MUTUAL COMPANY** | : | |
| **Planitiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LBL SKYSYSTEMS (U.S.A), INC.,** | : | |
| **ST. PAUL GUARANTEE INSURANCE** | : | |
| **COMPANY, SOLERA CONSTRUCTION,** | : | |
| **INC., DCM ERECTORS, INC., ERNST** | : | |
| **& YOUNG, INC., RAYMOND CHABOT** | : | |
| **INC., LINDA ANGELLO as** | : | |
| **COMMISSIONER OF THE NEW YORK** | : | **NO.  06-4779** |
| **STATE DEPARTMENT OF LABOR,** | : | |
| **ANDREW W. ERISTOFF as** | : | |
| **COMMISSIONER OF THE NEW YORK** | : | |
| **STATE DEPARTMENT OF TAXATION** | : | |
| **AND FINANCE, LAURENTIAN BANK** | : | |
| **OF CANADA** | : | |
| **Defendants.** | : | |
| | : | |

**O R D E R**

**AND NOW**, this 18th day of May, 2007, upon consideration of the Motion of St. Paul

Guarantee Insurance Company for Entry fo Judgment by Default or, in the Alternative, for

Summary Judgment Against the Plaintiffs and the Other Defendants (Document No. 50, filed

December 21, 2006); Cross-Motion of Solera Construction, Inc. and DCM Erectors, Inc. Seeking

Entry of an Order (I) Dismissing Certain Defendants and Striking their Pleading; (II) Dismissing

the Cross-Claims of St. Paul Guarantee Insurance Company and LBL Skysystems, Inc.; and (III)

Granting Summary Judgment, or in the Alternative, Transferring this Action to the United States

District Court for the Eastern District of New York (Document No. 57, filed January 8, 2007);

Consolidated Reply Memorandum of Law in Support of St. Paul Guarantee Insurance

Company's Motion for Entry of Judgment by Default or, in the Alternative, for Summary

Judgment, and Memorandum of Law in Opposition to Solera/DCM's Cross-Motions for

Dismissa, Summary Judgment, and Transfer (Document No. 60, filed January 25, 2007); and

Brief in Reply for Defendants, Solera Construction, Inc. and DCM Erectors, Inc., in Further

Support of their Cross-Motion for Dismissal, Summary Judgment, and Transfer (Document No.

65, filed February 16, 2007), for the reasons stated in the attached Memorandum, **IT IS**

**ORDERED** as follows:

1.      The Cross-Motion of Solera Construction, Inc. and DCM Erectors, Inc. Seeking

Entry of an Order (I) Dismissing Certain Defendants and Striking their Pleading; (II) Dismissing

the Cross-Claims of St. Paul Guarantee Insurance Company and LBL Skysystems, Inc.; and (III)

Granting Summary Judgment, or in the Alternative, Transferring this Action to the United States

District Court for the Eastern District of New York (Document No. 57) is **DENIED;**

2.      That part of the Motion of St. Paul Guarantee Insurance Company for

Entry of Judgment by Default or, in the Alternative, for Summary Judgment Against the

Plaintiffs and the Other Defendants (Document No. 50) that seeks Judgment by Default is

**DENIED;**

2.      That part of the  Motion of St. Paul Guarantee Insurance Company for Entry of

Judgment by Default or, in the Alternative, for Summary Judgment Against the Plaintiffs and the

Other Defendants (Document No. 50) that seeks Summary Judgment Against the Plaintiffs and

the Other Defendants is **GRANTED** and **JUDGMENT IS ENTERED** in **FAVOR** of defendant

St. Paul Guarantee Insurance Company and **AGAINST** plaintiffs Sentry Select Insurance Co. and

Sentry Select Insurance A Mutual Company; and defendants Solera Construction, Inc.; DCM

Erectors, Inc.; Ernst & Young, Inc.; Raymond Chabot, Inc.; Linda Angello as Commissioner of

the New York Department of Labor; Andrew W. Eristoff as Commissioner of the New York

Department of Taxation and Finance; and Laurentian Bank of Canada.

      **IT IS FURTHER ORDERED** that the proceeds of the LBL Judgment deposited in

Account Number 8618704508 at PNC Bank by Escrow Trustee, Lavin, O'Neil, Ricci, Cedrone &

DiSipio, in the amount of $1,747,893.50 (representing the sum then due under the LBL Judgment

inclusive of post-judgment interest), less the award of attorney fees, costs and expenses to

plaintiffs in the amount of $48,128.72 – for a total of $1,699,764.78 – plus interest shall be paid

to St. Paul within ten (10) days.

      **IT IS FURTHER ORDERED** that the Clerk of Court shall **MARK** this case **CLOSED**

for **STATISTICAL PURPOSES**.


                     **BY THE COURT:**


                     **/s/ Honorable Jan E. DuBois**
                        **JAN E. DUBOIS, J.**