IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SENTRY SELECT INSURANCE COMPANY and SENTRY INSURANCE A MUTUAL COMPANY** | : : : | **CIVIL ACTION** |
| Planitiffs, | : : | |
| v. | : : | |
| **LBL SKYSYSTEMS (U.S.A), INC., ST. PAUL GUARANTEE INSURANCE COMPANY, SOLERA CONSTRUCTION, INC., DCM ERECTORS, INC., ERNST & YOUNG, INC., RAYMOND CHABOT INC., LINDA ANGELLO as COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF LABOR, ANDREW W. ERISTOFF as COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, LAURENTIAN BANK OF CANADA** | : : : : : : : : : : : : : : | **NO. 06-4779** |
| Defendants. | : : | |

## ORDER AND MEMORANDUM

### ORDER

**AND NOW** this 26th day of June, 2007, upon consideration of the Brief for Defendants Solera Construction, Inc. and DCM Erectors, Inc., in Support of Motion for a Stay Pending Appeal (Document No. 73, filed June 7, 2007); and St. Paul Guarantee Insurance Company's Response to Brief for Solera and DCM for a Stay Pending Appeal (Document 76, filed June 15, 2007), for the reasons set forth in the attached memorandum, **IT IS ORDERED** that the Motion of Defendants Solera Construction, Inc. and DCM Erectors, Inc. for a Stay Pending Appeal is **DENIED**.

**IT IS FURTHER ORDERED** that the Order dated June 7, 2007, staying the Order of

May 18, 2007, which required "that the proceeds of the LBL Judgment deposited in Account Number 86187104508 at PNC Bank by Escrow Trustee, Lavin O'Neil, Ricci, Cedrone & DiSipio, in the amount of $1,747,893.50 (representing the sum then due under the LBL Judgment inclusive of post-judgment interest), less the award of attorney fees, costs and expenses to plaintiffs in the amount of $48,128.72 – for a total of $1,699,764.79 – plus interest shall be paid to St. Paul within ten (10) days," is **VACATED**.

**IT IS FURTHER ORDERED** that the Escrow Trustee, Lavin, O'Neil, Ricci, Cedrone & DiSipio, place in escrow the sum of $1,000 from the aforesaid fund in the total amount of $1,699,764.79 plus interest. The balance – $1,698.764.79 plus interest – shall be paid by the Escrow Trustee to St. Paul Guarantee Insurance Company within ten (10) days.

## MEMORANDUM

Presently before the Court is a Motion for stay pending appeal filed by defendants Solera Construction, Inc. and DCM Erectors, Inc. ("Solera/DCM"). For the reasons set forth below, Solera/DCM's Motion is denied.

**I.     BACKGROUND**

Plaintiffs, judgment debtors in a judgment entered in this Court by a Memorandum and Order dated September 6, 2006, in Civil Action No. 02-5379 ("LBL Judgment"), initiated this action by interpleader complaint on October 26, 2006. Plaintiffs sought a judicial determination of entitlement to the proceeds of the LBL Judgment.

In a Memorandum and Order dated May 18, 2007, the Court entered judgment in favor of interpleader defendant St. Paul Guarantee Insurance Company ("St. Paul") and against plaintiffs

2

and the other interpleader defendants. Specifically, the Court granted St. Paul's Motion for Summary Judgment, holding that St. Paul's security interest in the disputed funds had priority over any other claim and that St. Paul was entitled to all funds at issue, less reasonable attorney fees, costs and expenses awarded to interpleading plaintiffs by the Court. In so ruling, the Court also denied Solera/DCM's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Cross Motion for Summary Judgment. On June 6, 2007, Solera/DCM filed a Notice of Appeal to the United State Court of Appeals for the Third Circuit, and thereafter filed the instant Motion for a Stay Pending Appeal in this Court.

## II. DISCUSSION

### A. Legal Standard

The Court must consider the following factors in evaluating a motion for stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Commodity Futures Trading Comm'n v. Equity Fin. Group, LLC, 2007 U.S. Dist. LEXIS 34706, *3 (D.N.J. May 11, 2007). "The burden of establishing whether these four factors have been met lies with the party seeking the stay. However, while these four 'factors structure the inquiry . . . no one aspect will determine its outcome. Rather, proper judgment entails a delicate balancing of all elements.'" United States v. Nicolet, Inc., 1988 U.S. Dist. LEXIS 1858, *3 (E.D. Pa. Mar. 1, 1988) (quoting Harris v. Pernsley, 654 F. Supp. 1057, 1059 (E.D. Pa. 1987)).

B.     **Likelihood of Success on Appeal**

Solera/DCM argues that the Court erred in denying Solera/DCM's Motion to Dismiss and Motion for Summary Judgment and in granting St. Paul's Motion for Summary Judgment, and further argues that Solera/DCM will likely prevail on an appeal of those decisions.

In the May 18, 2007 Memorandum and Order, the Court found that St. Paul's security interest in the funds at issue had priority over any other claim and, on that basis, that St. Paul was entitled to the funds. Specifically, the Court concluded that St. Paul had a perfected security interest in LBL's assets that was prior in time to any interest asserted by any other parties. Solera/DCM faults the Court for concluding that St. Paul's security interest had attached by finding that St. Paul gave value to LBL through the disbursement of security bonds.

The Court discussed these bonds as follows:

> Second, the Court must determine whether value was given from St. Paul to LBL. St. Paul argues that value was given in the form of . . . bonds issued, "or caused to be issued" by St. Paul in support of LBL's construction contracts. See Knudsen Decl. ¶ 5. Solera/DCM disputes that value was given arguing that "St. Paul merely vaguely alleges that LBL USA is indebted to St. Paul in the approximate amount of $13 million 'in connection with bonds' that St. Paul issued. St. Paul fails to identify these 'bonds' in any manner or the construction projects for which they were issued." Id. at 22.
>
> The Court rejects Solera/DCM's argument that no value was given; the submissions of St. Paul aptly demonstrate that St. Paul issued numerous bonds to LBL. St. Paul has submitted "a true and complete copy of [St. Paul's] Summary of Claims relating to bonds issued on behalf of LBL" generated from St. Paul's automated claims system, and copies of the Bonds issued by those projects identified in the Summary. See Suppl. Knudsen Decl., Exs. D, E, F. Thus, the Court concludes that St. Paul has met the second step because value was given from St. Paul to [LBL] in the form of bonds.

Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.), Inc., 2007 U.S. Dist. LEXIS 37520, *35-36 (E.D. Pa. May 18, 2007).

Solera/DCM argues that the Court erred in this conclusion because, as St. Paul's

uncontroverted evidence demonstrated, the bonds issued to LBL for projects in the United States were issued through intermediary companies, rather than directly from St. Paul. The Court will clarify and expand its holding on this point.

In a sworn affidavit, Mark Knudsen, Vice President of St. Paul, explained the bonding arrangement as follows:

> [St. Paul], as a Canadian company, is not and has never been licensed to issue surety bonds in the United States. As a result, in order to serve its Canadian clients with U.S. surety bond requirements, [St. Paul] contracted with surety companies licensed to issue bonds in the United States. [St. Paul] would then reinsure or indemnify the U.S. surety company for 100% of all claims paid by the surety on the issued bond.

Suppl. Knudsen Decl ¶ 6. Through such "fronting" arrangements, St. Paul expended in excess of $13 million for work performed on LBL's construction contracts. Solera/DCM acknowledged that such fronting arrangements "are a perfectly legal and well-established scheme utilized by insurance companies who are not licensed or authorized to issue policies or bonds within a jurisdiction." Solera/DCM Reply at 11-12. However, Solera/DCM argues that St. Paul's security interest fails because the security agreement between LBL and St. Paul did not extend to bonds issued by third parties, and therefore the funds expended by St. Paul did not "give value" to LBL.[1]

For the purposes of the New York U.C.C., which governs this case, "[a] person gives 'value' for rights if he acquires them . . . (d) generally, in return for any consideration sufficient to support a simple contract." N.Y. U.C.C. § 1-201(44). In the May 18, 2007 Memorandum and

---

[1]Although not raised by either party in addressing this issue, the Court further notes that St. Paul directly bonded LBL's Bureau d'affaires de La Caisse de Depot project, a Canadian construction project, in the amount of C$13,682,238. See Suppl. Knudsen Decl. ¶ 19, Exs. E, F. St. Paul's Summary of Claims notes a C$279,007 loss on that bond. Id. Ex. E.

Order, the Court held that St. Paul effectively gave value through its financing of LBL's performance bonds. Such financing was consideration sufficient to support the contract. Moreover, bonds financed through fronting agreements were explicitly named as consideration for the security agreement. Specifically, in naming "consideration for the present agreement," the parties to the agreement referred to bonds issued by St. Paul

> or any surety, joint or several, any re-insurance company and any other surety procured by the Surety [St. Paul] upon the request of the Principal [LBL] to issue a Bond or Bonds, whether or not such Bond or Bonds are issued by [St. Paul] or whether or not [St. Paul] retains any interest in any such Bond or Bonds.

Knudsen Decl., Ex. A ¶ 7,9.[2] Accordingly, by financing LBL's performance bonds directly and through fronting arrangements, St. Paul "gave value" to LBL as anticipated by the security agreement, and therefore the security interest attached.

The Third Circuit "has made it clear that arguments, allegations or 'facts' contained in

---

[2] The relevant provisions of the security agreement provide in full:
  7. *Consideration for the present agreement*– The indemnitors acknowledge that the Surety requires their signatures to the present agreement in consideration:
   (a) of the issue of Bonds, whether past, present and future by the Surety or by others referred to in paragraph 9 herein, directly or indirectly . . . .
          * * *
  9. *Additional beneficiaries of the present agreement* – All of the terms and conditions of the present agreement are for the benefit of:
   (a) any successors or assigns of the Surety, including as a result of mergers, acquisitions of portfolios, or otherwise, and
   (b) any surety, joint or several, any re-insurance company and any other surety procured by the Surety upon the request of the Principal to issue a Bond or Bonds, whether or not such Bond or Bonds are issued by the Surety or whether or not the Surety retains any interest in any such Bond or Bonds.
Knudsen Decl., Ex. A ¶ 7,9.

briefs, and that are not evidentiary because they are not sworn to, are insufficient to overcome a motion for summary judgment based on sworn affidavits." Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 892 (3d Cir. 1992). Because Solera/DCM again has failed to present any evidence to contradict the sworn affidavits and supporting documents submitted by St. Paul, the Court concludes that Solera/DCM is not likely to succeed on the merits of their argument in the Third Circuit.[3] Therefore, this factor weighs against the granting of the motion to stay.

### C. Irreparable Injury to Movant

The Court next examines whether the denial of a stay will cause irreparable harm to Solera/DCM. Solera/DCM argues that, if a stay is not granted, they will suffer irreparable harm because (a) disbursement of the proceeds of the LBL Judgment to St. Paul will leave Solera/DCM, if ultimately successful on appeal, with "no fund to look to" and (b) "Solera/DCM's appeal may become moot under the useless judgment doctrine as the *res* will no longer be in existence." Mot. to Stay at 12 (citing Eurasia Int'l Ltd. v. Holman Shipping Inc., 411 F.3d 578 (5th Cir. 2005)).

The Third Circuit has rejected the argument that the loss of an appellate right is, in and of itself, irreparable injury, noting that such a loss is a factor to be considered "but that alone does not justify pretermitting an examination of the nature of the irreparable injury alleged and the

---

[3] Solera/DCM also argues that "[a]t a minimum, Solera/DCM was entitled to discovery and a hearing on damages to insure that" St. Paul's documentary evidence was accurate. Mot. to Stay at 11. The Court notes that at no time prior to the instant motion did Solera/DCM request a hearing on damages, nor additional time to conduct discovery. Cf. United States v. 2001 Honda Accord Ex VIN # 1HGCG22561A035829, 2003 U.S. Dist. LEXIS 4029, *6-7 (M.D. Pa. Mar. 18, 2003).

particular harm that will befall the [movant] should the stay not be granted." Rep. of Phillippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991); see also United States v. Carlin, 2006 U.S. Dist. LEXIS 80652, *4-5 (E.D. Pa. Nov. 2, 2006).  Accordingly, the Court must examine the nature of the irreparable injury alleged to determine whether this factor weighs in favor of the motion to stay.

At the outset, the Court notes that St. Paul has agreed to withhold and escrow the sum of $1,000 from the disbursement of St. Paul's distributional share of the funds, pending the outcome of the appeal.  St. Paul Resp. at 9 n.5.  Such withholding will preserve the Third Circuit's jurisdiction and preclude application of the useless judgement doctrine.

The only remaining alleged irreparable harm is Solera/DCM's concern about recovery from St. Paul after disbursement.  Solera/DCM describes this concern as follows:

> If the proceeds of the LBL Judgment are disbursed to [St. Paul], it is likely that Solera/DCM will never have access to those funds, and may not be able to obtain jurisdiction over [St. Paul].  This Court currently has control over the Interpleaded Funds.  However, as soon as such funds are disbursed, this Court will not have control over the proceeds and the proceeds will never again be available to Solera/DCM, as they will be in a foreign country and jurisdiction.

Mot. to Stay at 12.  To the extent that Solera/DCM is arguing that this Court will lose jurisdiction over St. Paul once the disbursement is made, Solera/DCM is incorrect.  Although, as noted by Solera/DCM, St. Paul is a Canadian corporation, that fact does not negate the Court's jurisdiction over this matter or continuing ability to direct St. Paul to pay funds to Solera/DCM if warranted.  To the extent that Solera/DCM is arguing that St. Paul might become insolvent or otherwise unable to return funds should the appeal be successful, that concern is too speculative to constitute irreparable harm.  Cf. FTC v. Equitable Res., Inc., 2007 U.S. Dist. LEXIS 36890, *18-

19 (W.D. Pa. May 21, 2007) (rejecting an argument as too speculative that because it will be difficult to "unscramble the eggs" of a merger transaction, denial of a stay preventing that transaction would constitute irreparable harm). Accordingly, the Court concludes that, in light of the withholding of a portion of the funds, Solera/DCM will suffer no irreparable harm if the motion to stay is denied. Thus, this factor does not weigh in favor of granting the motion.

### D.     Harm to Other Interested Parties

St. Paul alleges that, should the stay be granted, it may suffer marginal injury. Specifically, St. Paul argues that it will be harmed to the extent that the funds in escrow may be earning a lower rate of interest while in escrow than if those funds were utilized by St. Paul through its ordinary business activities. St. Paul Resp. at 9-10. The Court does not consider such an admittedly marginal harm sufficient to constitute a "substantial" injury under Hilton v. Braunskill, 481 U.S. 770, 776 (1987). Accordingly, this factor does not weigh against the issuance of a stay.

### E.     The Public Interest

Acknowledging that "it is unlikely that the granting of a stay in this case will have any real impact on the public interest," Solera/DCM argues that "it is within the public interest to protect the proceeds of the Interpleaded Funds and prevent the removal of these assets from the country by a foreign defendant." Mot. for Stay at 13.[4] As the Court has already determined that

---

[4] The Court notes that in support of this argument, Solera/DCM cites In re Uranium Antitrust Litig., 617 F.2d 1248 (7th Cir. 1980), which is completely inapposite. In that case, the Seventh Circuit held that the entry of injunctions that prevented defaulting defendants from transferring assets of the United States without prior approval of the Court served "a strong national interest in effective and meaningful enforcement of the American anti-trust laws." Id. at 1261. That case has no bearing whatsoever on the issue presently before the Court.

St. Paul is entitled to the funds at issue, it is clearly not against the public interest to authorize the distribution of those funds to St. Paul at this time. Thus, the Court concludes that Solera/DCM has not demonstrated that this factor weighs in favor of granting the motion to stay.

### III.     CONCLUSION

The Court finds that, on balance, the factors weigh against granting the motion to stay. Accordingly, Solera/DCM's motion is denied.

**BY THE COURT:**

**/s/ Honorable Jan E. DuBois**
       **JAN E. DUBOIS, J.**